UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANGELA BEVERIDGE,                          Case No. 14-14226

        Plaintiff,                     Paul D. Borman
v.                                         United States District Judge

COMMISSIONER OF SOCIAL SECURITY,           Stephanie Dawkins Davis
                                           United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION ON
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 17)</u>**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On October 21, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge Paul D. Borman referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3).  On January 5, 2016, the case was reassigned by Text-Only Order to the undersigned pursuant to Administrative Order.  (*See* Text-Only Order entered January 5, 2016).  On April 2, 2015, plaintiff filed her motion for summary judgment.  (Dkt. 15).  On April 29, 2015, the Commissioner filed her motion for

summary judgment (Dkt. 17), and on May 18, 2015 plaintiff replied (Dkt. 18).
The matter is now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff protectively filed a Title II application for a period of disability and
disability insurance benefits on October 6, 2011.  The same day, plaintiff filed a
Title XVI application for supplemental security income.  In both applications,
plaintiff alleged a disability beginning March 1, 2010.  (Dkt. 13-5, Pg ID 292-
305).  The Commissioner initially denied plaintiff's applications on April 16,
2012.  (Dkt. 13-3, Pg ID 202-227).  Thereafter, plaintiff requested an
administrative hearing, and on March 18, 2013, she appeared with counsel before
Administrative Law Judge ("ALJ") Renita Barnett-Jefferson, who considered her
case *de novo*.  (Dkt. 13-2, Pg ID 107-139).  In a May 17, 2013 decision, the ALJ
determined that plaintiff was not disabled within the meaning of the Social
Security Act.  (Dkt. 13-2, Pg ID 34-51).  Plaintiff requested a review of this
decision, and the ALJ's decision became the final decision of the Commissioner
when, after the review of additional exhibits,[1] the Appeals Council on August 29,

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a
request to review the ALJ's decision, since it has been held that the record is closed at the
administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not
part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th
Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since
district court review of the administrative record is limited to the ALJ's decision, which is the
final decision of the Commissioner, the court can consider only that evidence presented to the
ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of

2014, denied plaintiff's request for review.  (Dkt. 13-1, Pg ID 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).  Plaintiff filed this suit on November 3, 2014.  (Dkt. 1).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment is **DENIED**, that the findings of the Commissioner are **REVERSED**, and this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    <u>ALJ Findings</u>

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since February 10, 2007, the alleged onset date.  (Dkt. 13-3, Pg ID 182).  At step two, the ALJ found that plaintiff had the following severe impairments: chronic pain secondary to fibromyalgia and major depression.  (*Id*.)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that

---

substantial evidence review.

Therefore, this court is unable to review any evidence that plaintiff submitted to the Appeals Council, including the consultative examination report from George Pestrue, dated January 11, 2010.  *See* Dkt. 13-2, Pg ID 63.  Moreover, and alternatively, the undersigned notes that the evidence does not meet the standard for a sentence six remand.  First, Dr. Pestrue's report was in existence at the time of the ALJ's 2013 decision; and second, the report does not concern a period of time under review by the ALJ.

3

met or equaled one of the listings in the regulations.  (*Id.* at 183).

The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except she can occasionally climb ramps,
> stairs, ladders, ropes and scaffolds. She can occasionally
> balance, stoop, kneel, crouch and crawl as well as
> frequently perform activities requiring bilateral handling
> and fingering. She can understand, remember and carry
> out simple instructions. She should not work in close
> proximity to others in order to minimize distraction. She
> should not perform fast paced production work and she
> can have normal interaction with supervisors, co-workers
> and the public.

(Dkt. 13-3, Pg ID at 184).  At step four, the ALJ determined that plaintiff was

capable of performing her past relevant work as a cashier.  (Dkt 13-3, Pg ID 188).

At step five, the ALJ alternatively concluded that based on plaintiff's age,

education, work experience and RFC, there are additional jobs that exist in

significant numbers in the national economy that plaintiff can perform and, for all

of the above reasons, she has not been under a disability from February 10, 2007,

through the date of the ALJ's decision.  (Dkt. 13-3, Pg ID 190).

B.    Plaintiff's Claims of Error

Plaintiff first claims that the RFC analysis was not supported by substantial

evidence.  Plaintiff specifically says that the ALJ failed to weigh the opinion of

plaintiff's treating physician, Dr. Clark Jones, in accordance with the regulations.

(Dkt. 15-1, Pg ID 611).  The SSA Regulations articulate the rules for weighing

opinion evidence from treating sources:

> Generally, we give more weight to opinions from your
> treating sources, since these sources are likely to be the
> medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence
> that cannot be obtained from the objective medical
> findings alone or from reports of individual
> examinations.

20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2).  If a treating source's opinion is well

supported and consistent with other substantial evidence of record, it is entitled to

controlling weight.  (*Id.*)  The so-called "treating physician rule" has been

consistently applied by the Sixth Circuit, which has held that the opinions of

treating physicians are typically dispositive.  *Johnson v. Comm'r of Soc. Sec.*, 652

F.3d 646, 651 (6th Cir. 2011).  Moreover, if the ALJ declines to give a treating

source's opinion controlling weight, she must then balance the following factors to

determine what weight to give the opinion:  "the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, supportability of the opinion, consistency of the opinion

with the record as a whole, and specialization of the treating source."  *Wilson v.

Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R.

§§ 404.1527(c), 416.927(c).

Here, plaintiff acknowledges that the ALJ adequately summarizes plaintiff's course of treatment and the opinion evidence; however, complains that the ALJ fell short when she discounted the opinion of plaintiff's primary care physician, Dr. Jones. Plaintiff argues that Dr. Jones' opinion is entitled to dispositive weight where it did not conflict with other evidence in the record. 20 C.F.R. §§ 416.927(c)(2); 404.1527(c)(2); *Johnson*, 652 F.3d at 651; *Tuohy*, 1994 U.S. App. LEXIS 22923, at *13-14. Dr. Jones provided a detailed, function-by-function assessment of plaintiff's limitations, and yet the ALJ discredited Dr. Jones' limitations, finding that his opinion conflicted with the medical evidence from Drs. Weaver and Bash. Plaintiff argues that the recommendations of Drs. Weaver and Bash that plaintiff "increase her level of fitness with some type of aerobic activity" is not at odds with Dr. Jones' stated limitations, nor does it evince an ability to engage in full-time work. *See* SSR 96-8p (an RFC represents the "most" a claimant can do, on a "regular and continuing basis," meaning "8 hours a day, for 5 days a week").

Plaintiff additionally asserts that the ALJ's finding that Dr. Jones' records contradict the limitations in his opinion is a mischaracterization of the medical evidence (i.e., the ALJ's finding regarding the word "null" next to "chronic pain" in January 18, 2013 and October 5, 2012 treatment notes). Plaintiff argues that the value "null" appears in Primary Care's records when *a value was not entered by*

*the physician for that particular field*; for example, it says "null" next to the section for "pre-surgical clearance," which makes sense considering the treatment note indicates that "Dr. Baker is requesting a pre-surgical clearance from cardiology." (Dkt. 13-8, Pg ID 515). The word "null" also appears throughout Primary Care's records in spaces provided for diagnoses that are long established in the record. *See, e.g.*, Dkt. 13-8, Pg ID 518 ("null" next to "thyroid nodules," "arthritis," "depression," and "pelvic pain," despite copious records of these impairments); *Id.* at Pg ID 450 (same). Plaintiff insists that the ALJ clearly misreads the word "null" as having substantive import when, in fact, the physician simply did not insert a value for that particular field. Had the ALJ properly weighed Dr. Jones' opinion, he would have found plaintiff to be disabled. Further, the VE testified that many of Dr. Jones' limitations precluded work including the restriction of using her hands and fingers for only 10% of an 8 hour workday. (Dkt. 13-8, Pg ID 535-537).

Plaintiff also argues that the ALJ and Appeals Council erred in failing to weigh the opinion of State consultative examiner, Dr. Pestrue. Here, only the second opinion of Dr. Pestrue was before the ALJ, and he gave it "some weight." (Dkt. 13-2, Pg ID 99). Plaintiff says that Dr. Pestrue's first opinion (dated 1/11/2010) was nearly identical to his second opinion (dated 4/11/2012), yet the ALJ rejected Dr. Pestrue's anxiety-related limitations with respect to plaintiff's

ability to interact with other people, and he failed to analyze the required statutory factors for weighing opinion evidence, including the consistency of Dr. Pestrue's opinion with the first opinion.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Plaintiff submitted Dr. Pestrue's first opinion to the Appeals Council, yet the Appeals Council denied review.  (Dkt. 1-6).  Plaintiff argues that this evidence was already in the possession of the ALJ and the Appeals Council and therefore excused from earlier submission.  *Cf. Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Richardson v. Comm'r of Soc. Sec.*, No. 11-12605, 2012 U.S. Dist. LEXIS 134704, at *4 (E.D. Mich. Sept. 20, 2012).  Alternatively, plaintiff suggests that this error is attributable to either the Appeals Council or the ALJ in that both failed to provide a decision denying review that properly assessed the opinion under the regulations and providing reasons for doing so.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (consistency of Dr. Pestrue's opinions); SSR 96-6p.  Plaintiff says that failure to weigh Dr. Pestrue's opinion is harmful because the ALJ failed to account for the aversion to groups of people which was consistent in plaintiff's therapy records from AuSable.

Finally, plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.  Specifically, plaintiff claims that the ALJ failed to weigh the statements provided by LaBelle Entrepreneurial Center and Michigan Rehabilitation Services, regarding plaintiff's ability to return to work.

8

*Maloney*, 480 Fed. Appx. at 810.  If credited, these statements could have altered

the disability determinations regarding plaintiff's inability to walk without the

assistance of a cane and inability to find work within her functional limitations.

Plaintiff also indicates that the ALJ erred by ignoring the medical evidence that

supported her subjective complaints of pain.  Plaintiff indicates that the ALJ

discounted plaintiff's reported side-effects from medication, despite medical

evidence of fatigue, sleep disturbance, dizziness, and vertigo.  *See, e.g.,* Tr. 13-8,

Pg ID 534, 590).  The ALJ also failed to credit plaintiff's positive work history,

which included consistent employment in several positions prior to becoming

disabled in 2007.  *Id*.; *See White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779, 789

(6th Cir. 2009) (claimant's "extensive work history and attempts to continue

working despite his disability support his credibility, a factor not even considered

by the ALJ.").

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner contends that substantial evidence supports the ALJ's

conclusions.  Specifically with respect to plaintiff's arguments, the Commissioner

says that the ALJ properly weighed the opinions of Drs. Jones and Pestrue.

On April 11, 2012, Dr. Pestrue opined that plaintiff's medical problems

were her primary disability.  (Dkt. 13-8, Pg ID 514).  He further stated that her

"social anxieties will make it difficult for her to work in social situations" and her

"depression leaves her tired and lacking in motivation." (*Id.*)  The ALJ afforded

Dr. Pestrue's opinion "some weight", explaining:

> Opinions of nontreating physicians are evaluated with
> particular attention as to: consistency with other
> evidence, the qualifications of the source and the degree
> to which the source offer[s] explanations for their
> opinions. He is not given great weight as he indicated
> that the claimant would have difficulty with her social
> anxiety, which would make it difficult for her to work in
> social situations.  However, he did not indicate the level
> of difficulty that this would cause and if the anxiety
> would only apply to people of the public in general. The
> undersigned also notes that during his examination, the
> claimant reported that she gets along with her neighbors
> and has ten friends.  She indicated that she talks to her
> friends, they visit her and every once in a while she is
> invited to eat with them. Au[S]able Valley Mental Health
> records demonstrate ongoing treatment.  On February 17,
> 2012, while the claimant reported ongoing anxiety and
> depression, she indicated that things have gotten better.
> She stated that the medication was working and she has
> been more motivated to do things.  She also indicated
> that others were noticing the differences (Exhibit B4F).
> Nonetheless, in taking everything into consideration as a
> whole, her social anxiety, as well as other mental
> difficulties were accounted for in the residual functional
> capacity assessment as indicated above.

(Dkt. 13-2, Pg ID 99).  The Commissioner contends that the ALJ's opinion

credited Dr. Pestrue's finding that plaintiff had social anxiety with regard to the

general public and limited her to an environment with only occasional, brief

interaction with the public.  (Dkt. 13-2, Pg ID 99).  Moreover, plaintiff presents no

evidence that contradicts the level of social limitation that the ALJ assessed.

10

In addition, plaintiff's argument that the ALJ failed to analyze all of the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c) fails as a matter of law.  First, the ALJ is not required to expressly discuss every regulatory factor.  *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).  Rather, the ALJ is only required to provide "good reasons" for the weight afforded to a medical opinion.  *(Id.)*  Here, the ALJ explained that the factors of supportability and consistency compelled her to give Dr. Pestrue's opinion only some weight.  (Dkt. 13-2, Pg ID 99).  Plaintiff fails to demonstrate any error in the ALJ's decision to give deference to these factors.

Plaintiff indicates that consistency in her medical records weighs in favor of finding greater social limitations; however, substantial evidence supports the ALJ's finding that plaintiff's social anxiety only limited her capacity to interact with public.  The ALJ specifically considered plaintiff's social interactions with neighbors and friends.  (Dkt. 13-2, Pg ID 99; Dkt. 13-8, Pg ID 511).  The ALJ also noted plaintiff's February 17, 2012 therapy report that her medication was working and that people around her had noticed the difference.  (Dkt. 13-2, Pg ID 99; Dkt. 13-8, Pg ID 490).  Also, on May 17, 2012, Carl Howard, MA, LPC, observed that plaintiff was cooperative and had good eye contact, normal speech, and adequate social judgment.  (Dkt. 13-8, Pg ID 546-547).  On June 25, 2012, plaintiff reported to Ms. Houghton that she had baked cookies for a funeral dinner.

(Dkt. 13-8, Pg ID 572).  Similarly, on July 16, 2012, plaintiff reported to Ms.

Houghton that she had been "very busy" and that her daughter had been involved

in several activities.  (Dkt. 13-8, Pg ID 570).  Likewise, on September 17, 2012,

plaintiff attended a self-esteem group and her therapist noted that the group had a

good discussion and provided support and encouragement to one another.  (Dkt.

13-8, Pg ID 567).  The Commissioner argues that none of this evidence suggests a

greater degree of social limitation than the ALJ assessed.  And, substantial

evidence supports the ALJ's finding that Dr. Pestrue's opinion was inconsistent

with the evidence to the extent he opined that plaintiff was restricted from normal

interaction with coworkers and supervisors.

Rather than cite any of the above evidence, plaintiff argues that the Appeals

Council erred when it denied review of the ALJ's decision.  However, when the

Appeals Council denies review of a claim, the ALJ's decision becomes the final

decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.  As such, "this

Court lacks the authority to review the Appeals Council's decision to deny review

of the ALJ's decision as the Appeals Council's denial is not the final decision of

the Commissioner."  *Smith v. Comm'r of Soc. Sec.*, No. 12-12160, 2013 WL

5243448, at *4 (E.D. Mich. Sept. 18, 2013).  Because this Court lacks the

authority to review the Appeals Council's decision to deny review, the

Commissioner argues that plaintiff's claim regarding the Appeals Council's

evaluation of submitted evidence should be considered moot.

The Commissioner also argues that the evidence does not meet the standard for a sentence six remand.  Plaintiff alleges that Dr. Pestrue's January 11, 2010 opinion was new and material evidence.  Dr. Pestrue's 2010 opinion was not new, as it was in existence at the time of the ALJ's 2013 decision.  *See Abbott v. Sullivan*, 905 F.2d 918, 925 n.5 (6th Cir. 1990).  The evidence is also not material, as the records do not pertain to the period under review by the ALJ, given that the opinion is dated January 11, 2010 (Dkt. 13-8, Pg ID 586), and the ALJ considered whether plaintiff was disabled from March 1, 2010 to May 17, 2013 (Tr. 24-43). *Casey v. Sec'y of Health and Human Servs*, 987 F.2d 1230, 1233 (6th Cir. 1993).

The Commissioner also argues that the ALJ properly weighed Dr. Jones' opinion.  Dr. Jones opined that plaintiff could walk three blocks, sit 45 minutes and stand five minutes at one time; and sit or stand/walk a total of about two hours in an eight-hour workday.  (Dkt. 13-8, Pg ID 535).  Dr. Jones opined that plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking and included periods of walking every thirty minutes.  (Dkt. 13-8, Pg ID 535-56).  Dr. Jones further opined that plaintiff would need 10 unscheduled breaks per workday, and she would need to rest one to two hours per break while lying down or sitting quietly.  (Dkt. 13-8, Pg ID 536).  Dr. Jones opined that plaintiff would need to elevate her legs with prolonged sitting and her legs would need to

13

be elevated ninety percent of a workday if she had a sedentary job. (*Id*.) Dr. Jones also opined that plaintiff could frequently lift and carry less than five pounds and hold her head in a static position; never twist or climb ladders; and rarely stoop (bend), crouch/squat, climb ladders, look down or up, or turn her head. (*Id*.) Dr. Jones opined that plaintiff could grasp, turn, and twist objects and engage in fine manipulations ten percent of a workday, but could not reach overhead or in front of her body at all. (*Id*. at 537). Dr. Jones opined that plaintiff would be off-task twenty-five percent or more of a typical workday. (*Id*.)

Although the ALJ recognized that Dr. Jones was plaintiff's treating physician, the ALJ determined that his opinion merited little weight, explaining:

> His opinion physical assessment of March 15, 2013, is inconsistent with his objective physical examination findings and with Dr. Weaver's recommendation of having the claimant perform aerobic exercises. In addition, on May 11, 2010, Dr. Bash also recommended the claimant to exercise (Exhibit B1F). On January 18, 2013, Dr. Jones' objective findings reflect normal musculoskeletal and neurological findings. He specifically described her chronic pain as null (Exhibit B8F). Several months prior, on October 5, 2012, the physical examination results were unremarkable and diagnoses of thyroid nodules, arthritis, depression and pelvic pain were described as null. It [is] also important to note, that Dr. Jones' records do not reflect edema of the lower extremities or the need to elevate legs/feet throughout the day. Dr. Bash is given great consideration as he has provided ongoing treatment to the claimant. While little weight is given to Dr. Jones' assessment at Exhibit B9F, great weight is given to his objective

14

> physical examination findings which appear to be
> consistent with the evidence of record as a whole.

(Dkt. 13-2, Pg ID 99-100).  The Commissioner contends that substantial evidence

supports the ALJ's opinion that Dr. Jones' opinion conflicted with the opinions of

Drs. Weaver and Bash.  For example, Dr. Jones opined that plaintiff could stand

for only five minutes at a time and would need ten unscheduled breaks per day that

each lasted one to two hours.  (Dkt. 13-8, Pg ID 536).  In essence, Dr. Jones

opined that plaintiff would need to rest ten to twenty hours per workday.  In

contrast to Dr. Jones' extreme recommendations, Drs. Weaver and Bash

recommended that plaintiff exercise for treatment and provided no limitations on

her exercise activity.  (Dkt. 13-8, Pg ID 479, 500).  The Commissioner further

points out that the ALJ merely determined that Dr. Weaver's recommendation was

inconsistent with the level of limitation in Dr. Jones' opinion.  The RFC finding

that plaintiff could engage in sustained work was not solely dependant on Dr.

Weaver's opinion.

The Commissioner also argues that substantial evidence supports the ALJ's

finding that Dr. Jones' opinion conflicted with his treatment notes.  For example,

Dr. Jones opined that plaintiff could stand for only five minutes (Dkt. 13-8, Pg ID

535), but on January 18, 2013, he observed that plaintiff had normal muscle

strength and tone.  (Dkt. 13-8, Pg ID 515).  Likewise, Dr. Jones opined that

15

plaintiff would need to elevate her legs ninety percent of a sedentary workday

(Dkt. 13-8, Pg ID 536), but he never recommended that she elevate her legs in his

treatment notes.  (*See, e.g.,* Dkt. 13-8, Pg ID 515-19).  Similarly, Dr. Jones opined

that plaintiff would be off-task twenty-five percent or more of a typical workday

(Dkt. 13-8, Pg ID 537), but all of his objective mental status exams of plaintiff

were entirely normal.  (*See, e.g.,* Dkt. 13-8, Pg ID 515, 518).  The Commissioner

therefore argues that Dr. Jones' treatment notes are simply not consistent with the

levels of limitations he recommended.

The Commissioner acknowledges that the ALJ may have made a technical

error regarding her interpretation of the phrase "null" in Dr. Jones' treatment

records; however, any error is harmless as substantial evidence supports the

"spirit" of the ALJ's findings–that Dr. Jones' opinion was inconsistent with his

treatment notes.  The Commissioner argues that plaintiff has additionally failed to

explain why the ALJ would have adopted Dr. Jones' extreme restrictions if this

technical error had not existed, especially where those restrictions were

inconsistent with all of Dr. Jones' objective findings and two other treating

sources' opinions, thus making a remand inappropriate.

The Commissioner next argues that plaintiff's arguments with respect to the

ALJ's credibility determination are not persuasive and should be rejected.  The

ALJ found plaintiff to be less than fully credible because there was no evidence

that she complied with Dr. Weaver's recommendations, she self-reported participating in many activities inconsistent for someone who is completely disabled, she indicated seeing her primary care physician for medication management and did not require emergent care, and because plaintiff lives at home and is the sole-caretaker of a minor child, manages her own finances, takes care of the home, and is able to attend church services.  (Dkt. 13-2, Pg ID 100).  Plaintiff indicates that the ALJ erred by not taking into account her fatigue as an alleged side-effect of her medications; however, the ALJ discussed the side effects of plaintiff's medications in great detail.  Fatigue, specifically, was not discussed because there was no evidence that such a side effect existed.  In fact, plaintiff reported to her therapist that her medication gave her "more motivation to do things and the people around her [we]re noticing differences."  (Dkt. 13-8, Pg ID 490).  Plaintiff likewise reported to Dr. Bash that overall she felt better since starting to take Celexa.  (Dkt. 13-8, Pg ID 523).  Moreover, plaintiff consistently reported in therapy that she was very busy, as she baked cookies and put up a pool with her family (Dkt. 13-8, Pg ID 572); got a new dog, cared for a daughter involved in several activities, and kept "plugging along" (*Id*.); was house-sitting and "had a lot of things to do and get done" (Dkt. 13-8, Pg ID 567).  The Commissioner contends that the plaintiff's failure to discuss the above evidence is fatal to her argument.

17

The Commissioner also argues that the fact that plaintiff's work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination. *See Wavercak v. Astrue*, 420 Fed. Appx. 91, 94 (2d Cir. 2011). Indeed, "[a]n ALJ is not required to explicitly discuss each and every possible factor that weighs for or against her credibility finding." *Reed v. Comm'r of Soc. Sec.*, No. 13-268, 2014 WL 1266847, at *11 (S.D. Ohio Mar. 26, 2014). Hence, plaintiff's argument is not persuasive. In any case, the Commissioner contends that plaintiff's work history is actually quite sparse and would not compel the ALJ to give more credence to her subjective complaints.

Finally, the Commissioner argues that the ALJ was not required to discuss lay witness statements from plaintiff's counselors at LaBelle Entrpreneurial Center and Michigan Rehabilitation Services. "The testimony of lay witnesses…is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004) (citing *Lashley v. Sec'y of Soc. Sec.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The Commissioner contends that plaintiff has failed to reconcile the contradictions between Mr. Vuillemot and Ms. Ryckman's statements with those of her treating physicians. Moreover, in this case, even if the ALJ should have explicitly weighed these third party statements, any error would have been harmless because

18

they were inconsistent with the opinions of plaintiff's treating physicians and thus would not have affected the disability determination.

D.   Plaintiff's Reply

In conceding that the ALJ erred when she gave substantive import to the word "null" appearing throughout plaintiff's treatment records, plaintiff argues that the ALJ failed to articulate good reasons for rejecting Dr. Jones' limitations as required by SSR 96-2p. This error is further compounded when the VE testified that adopting some of Dr. Jones' limitations would be work preclusive.

**III.   DISCUSSION**

A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions

20

among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

21

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

22

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis

1.    Medical Opinion Evidence

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal citations omitted).

Plaintiff takes no issue with how the ALJ summarized the record or opinion evidence. However, she argues that the ALJ erred when she gave "little weight" to the opinion of her treating physician, Dr. Jones, and did not provide the necessary "good reasons" for doing so. Plaintiff asserts that Dr. Jones provided a detailed, function-by-function assessment of plaintiff's limitations that was entitled to dispositive weight.

On March 15, 2013, Dr. Jones provided a medical source statement in which he opined that plaintiff could walk three city blocks without rest or severe pain. (Dkt. 13-8, Pg ID 535). Dr. Jones noted that plaintiff could sit for 45 minutes before needing to get up and could stand for five minutes before needing to sit down or walk around. (*Id*.) Dr. Jones indicated that plaintiff could sit for two hours and stand/walk for two hours in an 8-hour working day, and that she would need periods of walking around about every 30 minutes. (Dkt. 13-8, Pg. ID 535-536). Plaintiff would also require unscheduled breaks during a working day. (Dkt. 13-8, Pg ID 536). Dr. Jones opined that plaintiff would require 10 breaks during a working day and that she would need to rest one-to-two hours before returning to work. (*Id*.) On such breaks, plaintiff would need to lie down or sit quietly. (*Id*.) Dr. Jones also indicated that with prolonged sitting, plaintiff's legs required elevation. And, that if she had a sedentary job, her legs would need to be elevated 90% of the time. (*Id*.) Dr. Jones noted that plaintiff could frequently lift

26

less than five pounds.  (*Id.*)  He also opined that plaintiff could rarely stoop,

crouch, or climb stairs, and could never twist or climb ladders.  (*Id.*)  Plaintiff

could also rarely look down, turn her head right or left, or look up, but could

frequently hold her head in a static position.  (*Id.*)  Finally, Dr. Jones opined that

in a typical workday, plaintiff's symptoms would likely be severe enough to

interfere with attention and concentration need to perform even simple work tasks

such that she would be "off task" 25% of more of the time.  (Dkt. 13-8, Pg ID

537).

The ALJ afforded "little weight" to Dr. Jones' functional analysis,

reasoning:

> His opinion physical assessment of March 15, 2013, is
> inconsistent with his objective physical examination
> findings and with Dr. Weaver's recommendation of
> having the claimant perform aerobic exercises. In
> addition, on May 11, 2010, Dr. Bash also recommended
> the claimant to exercise (Exhibit B1F). On January 18,
> 2013, Dr. Jones' objective findings reflect normal
> musculoskeletal and neurological findings. He
> specifically described her chronic pain as null (Exhibit
> B8F). Several months prior, on October 5, 2012, the
> physical examination results were unremarkable and
> diagnoses of thyroid nodules, arthritis, depression and
> pelvic pain were described as null. It also important to
> note, that Dr. Jones' records do not reflect edema of the
> lower extremities or the need to elevate legs/feet
> throughout the day. Dr. Bash is given great consideration
> as he has provided ongoing treatment to the claimant.
> While little weight is given to Dr. Jones' assessment at
> Exhibit B9F, great weight is given to his objective

2:14-cv-14226-PDB-SDD   Doc # 23   Filed 03/10/16   Pg 28 of 33   Pg ID 696

> physical examination findings which appear to be
> consistent with the evidence of record as a whole.

(Dkt. 13-2, Pg ID 99-100).

Importantly, as noted above, in weighing the medical evidence, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Accordingly, an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence. *Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) (An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings.); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) (The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.).  In other words, though an ALJ is free to resolve issues of credibility as to lay testimony, or even to choose between properly submitted medical opinions, the ALJ is not permitted to substitute her own lay medical opinion for that of a treating or examining doctor. *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011),

28

adopted by 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC is reserved to the Commissioner.  20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) (The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because [i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination.); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.).

Here, the ALJ assigned "little weight" to treating physician Jones' opinion

29

because she concluded that Jones' physical assessment was inconsistent with his objective physical examination findings and with Drs. Weaver's and Bash's recommendations for plaintiff to perform aerobic exercise. (Dkt. 13-2, Pg ID 99). The ALJ also based her assessment of Jones' opinion on his description of plaintiff's chronic pain and physical examination results as being "null." Further, the ALJ supported her conclusions based on additional unremarkable, or "normal" physical examination results. (Dkt. 13-2, Pg ID 100). The undersigned agrees with plaintiff that a physician recommending aerobic exercise does not equate to plaintiff's ability to engage in full-time competitive work. *See* SSR 96-8p ("regular and continuing basis" meaning "8 hours a day, for 5 days a week.) Moreover, the Commissioner has acknowledged that the ALJ made a "technical" error regarding her interpretation of the word "null" within Dr. Jones' treatment records.

The Commissioner argues that any error in this regard is harmless; however, the undersigned concludes that it is impossible to determine how much weight the ALJ placed on this particular factor in discounting Dr. Jones' opinion. Further, contrary to the Commissioner's argument, the undersigned finds that substantial evidence does not support the "spirit" of the ALJ's findings otherwise. And, this error is particularly significant because the vocational expert indicated that adopting some of Dr. Jones' functional limitations would be work preclusive.

Moreover, the ultimate RFC in this case discounted the recommendations of plaintiff's treating physician and the undersigned is simply not able to discern how the ALJ formulated her RFC recommendations. The ALJ does not indicate from what medical opinion she draws the physical limitations that she incorporates into her RFC findings. Because there does not appear to be a medical underpinning for the ALJ's RFC determination, and she essentially interprets the raw medical data in functional terms, the undersigned concludes that the ALJ erred when she failed to adopt the findings of plaintiff's treating physician, Dr. Jones.

Although ultimately a finding of no disability is possible in this case, substantial evidence does not exist on the record to support the current RFC. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on her own independent medical findings. Under these circumstances, the undersigned concludes that a remand is necessary to obtain a proper medical source opinion regarding plaintiff's physical limitations.

Given the above conclusions, the ALJ will have to re-assess plaintiff's credibility depending on the conclusions the ALJ reaches on remand regarding plaintiff's RFC. As such, the undersigned will not assess plaintiff's argument on this point now.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment is **DENIED**, that the findings of the Commissioner are **REVERSED**, and this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: March 10, 2016                      s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 10, 2016, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov